**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CRIMINAL ACTION NO. 3:19-CR-77-JRW**

**UNITED STATES OF AMERICA,**
                                                                                              **Plaintiff,**

**v.**

**JAMES DOATY,**                                                                   **Defendant.**

**REPORT AND RECOMMENDATION**

This matter is before the Court on the Motion to Suppress Statement and Evidence Illegally Obtained from the Defendant on August 29, 2016 and Request for Hearing Thereon ("Motion to Suppress") filed by Defendant, James Doaty ("Doaty"). (DN 23.) The United States filed a Response. (DN 24.) The Court referred the Motion to Suppress to the undersigned "for a hearing, if necessary, and for findings of fact, conclusions of law, and recommendation." (DN 26.) On November 26, 2019, the undersigned held an oral argument on Doaty's Motion to Suppress and set a deadline for the parties to file post-hearing briefs. (DN 32.) Both the United States and Doaty submitted a post-hearing brief. (DNs 33, 35.) This matter is now ripe for review.

For the reasons stated herein, the undersigned **RECOMMENDS** that Doaty's Motion to Suppress (DN 23) be **DENIED**.

**I.     FINDINGS OF FACT**

On August 29, 2016, Doaty voluntarily reported to his probation officer, Brian Richardson ("Officer Richardson").[1] (DN 33-1, at PageID # 85.) Originally, Doaty was to report to probation on September 1, 2016, but he requested to report earlier on August 29, 2016. (*Id.* at 85, 90.) Prior

---

[1] The United States attached a video of a December 8, 2017, hearing on a motion to suppress Doaty made in Jefferson Circuit Court to its initial response to Doaty's Motion to Suppress (DN 23). (DNs 24, 25.) The United States also attached a transcript of that hearing to its post-hearing brief. (DN 33-1.) The undersigned will cite herein to the transcript of the same in lieu of the video itself.

to Doaty's arrival, Officer Richardson was made aware of a possible violation of the terms of Doaty's probation agreement. (*Id.* at 86.) Specifically, Officer Richardson received a community complaint of possible illegal activity from Doaty's ex-girlfriend, Lorica Lewis ("Lewis"), earlier in the month of August 2016. (*Id.* at 86, 92.) Lewis told Officer Richardson that Doaty was a "drug investor" and that Doaty would give a drug dealer $3,000 to $4,000 and would receive his money back after the drugs had been sold plus a little more. (*Id.* at 93, 100.) Lewis stated that Doaty and his brother possessed guns and stored a lot of guns in a house near the ex-girlfriend's house. (*Id.* at 100.) Doaty had previously reported to Officer Richardson that he was living with Lewis at Lewis's address. (*Id.* at 94.)

Officer Richardson also reviewed Doaty's Twitter account and observed posted photos of a 100 round ammunition drum magazine; a photo of a masked person holding guns; and posts alluding that Doaty was on probation, selling drugs, and paying off the judge. (*Id.* at 105, 107.) Doaty's Twitter posts included:

- Trying to sell some dope and eat caviar;
- Guns like I'm Bin Laden . . .;
- F*** being a product of my environment I bring the product to my environment;
- All this sh** I sold I should be in a big house;
- I know the judge imma shoot em chips;
- I'm the shooter, and the boss I don't need no killer;
- Who I sold it to is irrelevant; and
- Give me 6 months and a half how much a brick cost?

(DN 33-3, at PageID # 119, 124, 135, 137.)

2

When Doaty reported to Officer Richardson's office, Officer Richardson discussed the community complaint he had received with Doaty. (DN 33-1, at PageID # 87.) Officer Richardson then reviewed with Doaty the conditions of Doaty's Probation Agreement that Doaty had signed previously on March 17, 2016. (*Id.* at 86.) The Agreement provided;

> 1. I understand that I shall be subject to search and seizure without a warrant if my officer has reasonable suspicion that I may have illegal drugs, alcohol or other contraband on my person or property.
>
> . . .
>
> 8. I shall not violate any law or ordinance of this state, any other state or the United States.
>
> . . .
>
> 10. I understand that while on Pretrial Diversion that I shall not be permitted to purchase, own or have in my possession or control a firearm, ammunition, dangerous instrument or deadly weapon.

(DN 24-1, at PageID # 59.) After Officer Richardson went over the community complaint and conditions of Doaty's Probation Agreement, Officer Richardson told Doaty that he intended to search Doaty's vehicle. (DN 33-1, at PageID # 87.) Doaty then signed a consent to search form for his vehicle that Officer Richardson presented to him. (*Id.*; DN 24-2.) While Doaty signed the consent form, Officer Richardson asked Doaty if there was anything that would be a violation of Doaty's conditions in the vehicle to which Doaty responded that there might be a bullet in his car from when he was moving boxes. (DN 33-1, at PageID # 89.)

Officer Richardson, along with three other officers, proceeded to search Doaty's Mercedes. (*Id.* at 88.) When he opened the driver's side door, Officer Richardson spotted a loaded Smith and Wesson handgun lying on the floor under the steering wheel. (*Id.*) Doaty was then placed in handcuffs by the probation officers, and they notified law enforcement to arrest Doaty for the possession of the firearm. (*Id.* at 89-90.)

## II. CONCLUSIONS OF LAW

Doaty argued that any evidence seized from his vehicle as a result of a warrantless search of the same must be suppressed as Officer Richardson did not have reasonable suspicion to conduct a search of his vehicle. (DNs 23, 35.) Doaty also argued that "any statements or evidence directly or indirectly obtained therefrom as a result or consequence of a custodial interrogation by law enforcement" on August 29, 2016, must be suppressed.[2] (DN 23, at PageID # 48.) The United States addressed both arguments in its initial response and its post-hearing brief. (DNs 24, 33.) , The undersigned will address each separately below.

### A. The Search of Doaty's Vehicle

Doaty argued that the search of his vehicle was unlawful because Officer Richardson did not possess "reasonable suspicion that there would be any evidence of criminal conduct located in [Doaty's] vehicle." (DN 35, at PageID # 143-44.) In response, the United States argued that the search was supported by reasonable suspicion based on the community complaint and Doaty's social media postings. (DN 33, at PageID # 71.) "[T]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Richards*, 659 F.3d 527, 536 (6th Cir. 2011) (citing *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978)).

The Fourth Amendment of the United States Constitution grants "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. "[A] probationer's home, like anyone else's is protected by the Fourth Amendment requirement that searches must be 'reasonable.'" *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). However, "the nature of the relationship between state actors and individuals subject

---

[2] Though this argument was not raised again in Doaty's post-hearing brief (DN 35), the undersigned will address the same herein out of an abundance of caution.

4

to state supervision in lieu of or following release from prison alters the relevant analysis under the Fourth Amendment." *United States v. Herndon*, 501 F.3d 683, 687 (6th Cir. 2007); *see Griffin*, 483 U.S. 868; *United States v. Knights*, 534 U.S. 112 (2001). In *Griffin v. Wisconsin*, and *United States v. Knights*, the Supreme Court created "two distinct analytical approaches under which a warrantless probationer search may be excused" and still meet the requirements of the Fourth Amendment. *Herndon*, 501 F.3d at 687. Both Doaty and the United States cited only to *Knights* in their arguments as to the constitutionality of the search of Doaty's car. (DN 23, at PageID # 49; DN 24, at PageID # 56; DN 33, at PageID # 71; DN 35, at PageID # 143.) Because the Parties addressed only *Knights* and because the undersigned finds below that the search of Doaty's vehicle was reasonable under the totality of the circumstances as required by *Knights*, the undersigned will not address whether the search of Doaty's vehicle comported with *Griffin* herein. *See United States v. Payne*, 588 F. App'x 427, 431 (6th Cir. 2014) (citing *Herndon*, 501 F.3d at 688) ("If a warrantless search is reasonable under either *Knights* or *Griffin*, it need not pass muster under the other.")

The Sixth Circuit has explained that, under *Knights*, "a search of a probationer's property must be tested for reasonableness in light of the totality of the circumstances 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Herndon*, 501 F.3d at 690 (citing *Knights*, 534 U.S. at 119). Here, because Doaty was on probation, he "cannot reasonably assert the same measure of privacy protection afforded individuals not subject to state supervision." *Id.*; *see also Griffin*, 483 U.S. at 874 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)) ("To a greater or lesser degree, it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy 'the absolute liberty to which every citizen is entitled,

5

but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.' "). Doaty was aware of that fact because he signed conditions of probation that indicated he was subject to search without a warrant if his probation officer had a reasonable suspicion that he might have "illegal drugs, alcohol[,] or other contraband on [his] person or property." (DN 24-1.) Likewise, and as the Supreme Court has repeatedly acknowledged, "a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Sampson v. California*, 547 U.S. 843, 853 (2006). *See also Griffin*, 483 U.S. at 879, *Knights*, 534 U.S. at 121. Because the competing interests of Doaty and the State in this case are virtually identical to those addressed in *Knights*, as in *Knights*, "the balance of these considerations requires no more than reasonable suspicion to conduct a search of this probationer's [property]." *Knights*, 534 U.S. at 121.

  Having concluded that reasonable suspicion was all that was necessary for Officer Richardson to constitutionally search Doaty's car, the undersigned finds Officer Richardson possessed the requisite level of suspicion. "Reasonable suspicion is based on the totality of the circumstances and has been defined as requiring 'articulable reasons' and 'a particularized and objective basis for suspecting the particular person . . . of criminal activity.'" *United States v. Payne*, 181 F.3d 781, 788 (6th Cir. 1999) (citing *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)); *see United States v. Henry*, 429 F.3d 603, 609-10 (6th Cir. 2005). "An officer may make a reasonable suspicion determination 'based on the reasonable inferences he may draw in light of his experience.'" *Henry*, 429 F.3d at 613 (citing *United States v. Foster*, 376 F.3d 577, 586 (6th Cir. 2004)). Officer Richardson received a community complaint that gave him specific facts to believe Doaty was engaged in both criminal activity and activity that could be a violation of the

conditions of his probation. Specifically, Lewis indicated that Doaty possessed guns and was involved with illegal drugs and Officer Richardson observed Twitters posts by Doaty suggestive of involvement in these activities.

Doaty argued that there was not sufficient evidence of Lewis's reliability for Officer Richardson to rely on her community complaint. (DN 35, at PageID # 146). The Court assesses a tip based on the "totality of the circumstances," but requires a "less demanding showing" when applying a reasonable suspicion standard than when applying a probable cause standard. *United States v. Payne*, 181 F.3d 781, 790 (6th Cir. 1999). Here, the tip was not anonymous and was provided by someone whom Officer Richardson had reason to believe Doaty was living with at the time and who, therefore, would have had an opportunity to observe Doaty and his activities. The tip was also partially corroborated by Officer Richardson's review of Doaty's Twitter account and the pictures of a 100 round ammunition drum magazine, a masked person holding guns, and posts alluding to involvement in drug dealing Officer Richardson observed there, all of which are consistent with the community complaint that Doaty both possessed firearms and was involved in illegal activity.[3] Given these circumstances, the undersigned finds the combination of the tip and the Twitter posts constituted reasonable suspicion. *See Alabama v. White*, 496 U.S. 325, 330 (1990) ("[R]easonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.").

---

[3] Though Doaty vaguely alleged in his post-hearing brief that some of his Twitter posts were "rap lyrics," he did not provide a citation to any authority in support of a position that the origin of the phrases posted by Doaty changes the analysis. Whether original statements attributable to Doaty or reposted song lyrics, Doaty's independent and conscious choice to post statements suggestive of illegal activity was a proper basis for Officer Richardson's reasonable suspicion.

Doaty also argued that the information that Officer Richardson relied upon to form his reasonable suspicion was stale. (DN 35, at PageID # 145-46.) In determining whether information supporting a search is "stale," a court assesses, among other factors, "the inherent nature of the suspected crime and the objects sought." *United States v. Akram*, 165 F.3d 452, 456 (6th Cir. 1999). While the Sixth Circuit has found that "[d]rugs are not the types of objects that are likely to be kept," *Payne*, 181 F.3d at 790, "[f]irearms are durable goods and might well be expected to remain in a[n] [individual]'s possession for a long period of time . . . ." *United States v. Pritchett*, 40 F. App'x 901, 906 (6th Cir. 2002). Further, "[e]vidence of ongoing criminal activity will generally defeat a claim of staleness." *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001). Here, the community complaint was made earlier in the month of August before the August 29, 2016, search of Doaty's vehicle. The community complaint contained both information related to ongoing criminal activity and possession of firearms that defeated any concern that the intervening time had led the information to become stale. Accordingly, the undersigned finds Doaty's staleness arguments unavailing.

Based on the foregoing, the undersigned finds that the search of Doaty's vehicle was supported by reasonable suspicion and was reasonable within the meaning of the Fourth Amendment.

### B. *Miranda* Warnings

In his initial motion, Doaty argued that law enforcement conducted a custodial interrogation without advising him of his Miranda Rights.[4] (DN 23, at PageID # 49.) Doaty contended that any evidence obtained directly or indirectly from the custodial interrogation must be suppressed in accord with the holding of *Miranda v. Arizona*, 384 U.S. 436 (1966). (*Id.*)

---

[4] Interestingly, Doaty did not supplement, incorporate, or reference his *Miranda* argument from the initial Motion to Suppress in his post-hearing brief. Out of an abundance of caution, the undersigned will address this argument.

Specifically, prior to the search of his vehicle, in response to Officer Richardson's question about whether he would find anything that was a violation in Doaty's vehicle, Doaty replied that there might be some ammunition from when he was moving boxes. This statement was made prior to the search of Doaty's vehicle and prior to Doaty either being placed into handcuffs or arrested after the discovery of the firearm.

The Fifth Amendment states that a person may not be "compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. This privilege extends to custodial interrogations. *Colorado v. Spring*, 479 U.S. 564, 572 (1987); *Miranda*, 384 U.S. at 460-61. Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. To protect this constitutional privilege, the Supreme Court mandated that, prior to any custodial interrogation, the person being questioned "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id*. The requirements of *Miranda* do not apply if the person being questioned is not in custody or being deprived of his or her freedom of action. *United States v. Galloway*, 316 F.3d 624, 628-29 (6th Cir. 2003) (quoting *Miranda*, 384 U.S. at 477) ("*Miranda* warnings are necessary only if the defendant is subjected to a 'custodial interrogation.' ").

In order to determine whether someone is "in custody" for purposes of *Miranda*, a court must engage in an objective inquiry to determine whether there was a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (citing *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). The Supreme Court compared a probation visit to a custodial investigation in *Minnesota v. Murphy*, 465 U.S.

420 (1984). In that case, the defendant gave incriminating statements to his probation officer, who had prior knowledge of possibly incriminating information, during a routine visit in which the defendant was not physically restrained and free to leave. *Murphy*, 465 U.S. at 422-24. The Supreme Court distinguished probation office visits from custodial interrogations under *Miranda* by stating "any compulsion [the defendant] might have felt from the possibility that terminating the meeting would have led to revocation of probation was not comparable to the pressure on a suspect who is painfully aware that he literally cannot escape a persistent custodial interrogator." *Id.* at 433. In making this conclusion, the Supreme Court found that it was "unlikely that a probation interview, arranged by appointment at a mutually convenient time, would give rise to" the impression that "[a defendant] has no choice but to submit to the officers' will and to confess." *Id.* Further, the Supreme Court pointed to the defendant being familiar with the probation officer and the probation office to distinguish from "'an interrogation environment . . . created for no purpose other than to subjugate the individual to the will of the examiner.'" *Id.* (citing *Miranda*, 384 U.S. at 457).

In the case at hand, Doaty voluntarily scheduled a meeting with his probation officer earlier than he was required to report. Doaty also knew that he, or his property, was subject to search without a warrant if there was reasonable suspicion he was engaged in criminal activity. Further, Doaty was aware of the community complaint alleging Doaty's involvement in criminal conduct and that his probation officer intended to search his vehicle because Officer Richardson had advised him of the same. Doaty, nonetheless, stayed at the probation office, did not request a lawyer, and did not object to the search of his vehicle. Given the holding in *Minnesota v. Murphy* and the circumstances as described herein, the undersigned finds that Doaty was not in custody at the time of his statement regarding the ammunition prior to the search of his vehicle. Accordingly,

the undersigned will recommend that Doaty's Motion to Suppress (DN 23) be denied as to this argument.

## III. RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that Doaty's Motion to Suppress Statement and Evidence Illegally Obtained from the Defendant on August 29, 2016 and Request for Hearing Thereon (DN 23) be **DENIED.**

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record

February 19, 2020

## Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Crim. P. 59(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).