UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                                                Plaintiff

v.                                                                    Criminal Action No. 3:19-CR-77-RGJ

JAMES DOATY                                                                             Defendant

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

This matter comes before the Court on Defendant James Doaty's Motion to Suppress [DE 23]. The United States responded [DE 24; DE 33] and Doaty replied [DE 35]. Magistrate Judge Colin H. Lindsay issued a Report and Recommendation ("R&R"), recommending that the Motion be denied. [DE 37]. Doaty timely filed objections. [DE 39]. This matter is now ripe. For the reasons below, the Court **DENIES** Doaty's Motion to Suppress [DE 23], **OVERRULES** Doaty's Objections [DE 39], and **ACCEPTS** Magistrate Judge Lindsay's R&R [DE 37].

**I. BACKGROUND**

On August 29, 2016, Doaty voluntarily reported to his probation officer, Brian Richardson ("Officer Richardson"). [DE 33-1 at 85]. Originally, Doaty was to report to probation on September 1, 2016, but he requested to report earlier. *Id.* at 85, 90.

Before Doaty's arrival, Officer Richardson learned of a possible violation of the terms of Doaty's probation agreement. *Id.* at 86. Officer Richardson received a community complaint earlier in the month of August from Doaty's ex-girlfriend, Lorica Lewis ("Lewis"). *Id.* at 86, 92. Lewis told Officer Richardson that Doaty was a "drug investor" and that Doaty would give a drug dealer $3,000 to $4,000 and would receive his money back after the drugs had been sold plus a little more. *Id.* at 93, 100. Lewis stated that Doaty and his brother possessed guns and stored a

1

lot of guns in a house near the ex-girlfriend's house. *Id.* at 100. Doaty had reported to Officer Richardson that he was living with Lewis at Lewis's address. *Id.* at 94.

Officer Richardson also reviewed Doaty's Twitter account and observed posted photos of a 100 round ammunition drum magazine; a photo of a masked person holding guns; and posts alluding that Doaty was on probation, selling drugs, and paying off the judge. *Id.* at 105, 107. Doaty's Twitter posts included:

> • Trying to sell some dope and eat caviar (August 5, 2016)
>
> • Guns like I'm Bin Laden (August 5, 2016)
>
> • F*** being a product of my environment I bring the product to my environment (August 2, 2016)
>
> • All this sh** I sold I should be in a big house (July 22, 2016)
>
> • I know the judge imma shoot em chips (July 22, 2016)
>
> • I'm the shooter, and the boss I don't need no killer (July 21, 2016)
>
> • Who I sold it to is irrelevant (July 21, 2016)
>
> • Give me 6 months and a half how much a brick cost?  (July 21, 2016)

[DE 33-3 at 119, 124, 135, 137].

When Doaty reported to Officer Richardson's office, Officer Richardson discussed the community complaint he had received with Doaty. [DN 33-1 at 87]. Officer Richardson then reviewed with Doaty the conditions of Doaty's Probation Agreement that Doaty had signed previously. *Id.* at 86. The Agreement provided;

> 1.   I understand that I shall be subject to search and seizure without a warrant if my officer has reasonable suspicion that I may have illegal drugs, alcohol or other contraband on my person or property.
> . . .
> 8.   I shall not violate any law or ordinance of this state, any other state or the United States.
> . . .

2

> 10. I understand that while on Pretrial Diversion that I shall not be permitted to purchase, own or have in my possession or control a firearm, ammunition, dangerous instrument or deadly weapon.

[DE 24-1 at 59].

After Officer Richardson went over the community complaint and conditions of Doaty's Probation Agreement, Officer Richardson told Doaty that he intended to search Doaty's vehicle. [DE 33-1 at 87]. Doaty then signed a consent to search form for his vehicle that Officer Richardson presented to him. [*Id*.; DE 24-2]. While Doaty signed the consent form and before Officer Richardson searched his vehicle, Officer Richardson asked Doaty if there was anything in the vehicle that would violate Doaty's agreement to which Doaty responded that there might be a bullet in his car from when he was moving boxes. [DE 33-1 at 89].

Officer Richardson, along with three other officers, searched Doaty's Mercedes. *Id*. at 88. When he opened the driver's side door, Officer Richardson spotted a loaded Smith and Wesson handgun lying on the floor under the steering wheel. *Id*. The probation officers placed Doaty in handcuffs, and notified law enforcement to arrest Doaty for the possession of the firearm. *Id.* at 89-90.

Doaty moved to suppress evidence of his statements and the firearm recovered from his vehicle. [DE 23].

## II.     STANDARD

Under 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b)(1), a district court may refer a motion to suppress to a magistrate judge to conduct an evidentiary hearing, if necessary, and submit proposed findings of fact and recommendations for the disposition of the motion. This Court must "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C);

Fed. R. Crim. P. 59(b)(3). After reviewing the evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations of the magistrate judge. *Id.* The Court need not review, under a de novo or any other standard, those aspects of the report and recommendation to which no specific objection is made. *Thomas v. Arn,* 474 U.S. 140, 150 (1985). Rather, the Court may adopt the findings and rulings of the magistrate judge to which no specific objection is filed. *Id.* at 151.

## III. DISCUSSION

Doaty objects to the R&R's legal analysis and conclusions, asserting three errors in the R&R. First, Doaty objects to the finding that there "was reasonable suspicion to conduct a search of the defendant's car." [DE 39 at 165]. Second, Doaty asserts that Judge Lindsay's "opinion did not sufficiently address or refute" his argument that "the nexus requirement applies when using the standard of reasonable suspicion, just as it is when there is a probable cause standard." *Id.* at 166. Third and finally, Doaty objects to the "Magistrate Judge's analysis of the facts of this case as it relates to the reliability of the information relied upon to establish reasonable suspicion." *Id.*

### A.  First objection: No reasonable suspicion[1] to search Mr. Doaty's car

Mr. Doaty objects to Judge Lindsay's finding that "that there was reasonable suspicion to conduct a search of the defendant's car." [DE 39 at 165]. Doaty argues:

> In the Magistrate's Report, it is noted that the community complaint from Mr. Doaty's ex-girlfriend indicated that Mr. Doaty ". . .was involved with illegal drugs. . .". (DN 37, at page ID 156). While this is true in a general sense, it is necessary to place that assertion in context of the exact nature of her allegation. Even when considered in light of dated social media posts referencing supposed drug dealing, there is no indication that Mr. Doaty would *ever* be in actual possession of illegal drugs. The complaint alleged that Mr. Doaty was a "drug investor" (DN 37, Magistrate's Report, at page ID 151). This was described as a situation where Mr. Doaty allegedly staked an individual with sufficient funds to purchase drugs, and

---

[1] As discussed in the R&R, Doaty has a lessened privacy interest in his property because of his status as a probationer. [DE 37 at 154]. As a result, law enforcement only needs "reasonable suspicion to conduct a search" of his property. *United States v. Knights*, 534 U.S. 112, 121 (2001).

4

> then received the money back, with a profit, after the individual completed the sale of those drugs. (DN 33, at page ID 93, 100).
>
> . . .
>
> With regard to possession of firearms, the complaint was also very specific. The guns were alleged to be possessed by the defendant and his brother, and stored in the basement of a specific house located near the informant's. (Id, at page ID 100). There is no allegation that the guns would be kept in any other location. The twitter posts do not suggest that the guns (or ammunition) is located anywhere else, and certainly not in Mr. Doaty's car.

*Id.*

Reasonable suspicion is based on the totality of the circumstances and has been defined as requiring 'articulable reasons' and 'a particularized and objective basis for suspecting the particular person . . . of criminal activity.'" *United States v. Payne*, 181 F.3d 781, 788 (6th Cir. 1999) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)); *see United States v. Henry*, 429 F.3d 603, 609-10 (6th Cir. 2005). "An officer may make a reasonable suspicion determination 'based on the reasonable inferences he may draw in light of his experience.'" *Henry*, 429 F.3d at 613 (citing *United States v. Foster*, 376 F.3d 577, 586 (6th Cir. 2004)).

Officer Richardson had reasonable suspicion to search Doaty's car. Officer Richardson received a community complaint from Lewis in August 2016.[2] [DE 33-1 at 92]. She told Officer Richardson that Doaty was a "drug investor" and that he possessed firearms. *Id.* at 86, 92. Investing in drugs and possessing firearms are illegal activities and violations of the conditions of his diversion. Based on this information, it was reasonable for Officer Richardson to infer that Doaty was involved in criminal activity. *Henry*, 429 F.3d at 613.

Officer Richardson cross-checked his inference by reviewing Doaty's Twitter page. [DE 33-1 at 105]. Doaty's Twitter page is rife with "tweets" about drug dealing and weapon possession.

---

[2] Officer Richardson did not recall the exact date he received the call. [DE 33-1 at 92].

[DE 33-3]. Judge Lindsay documented several of these "tweets" in his R&R, but additional "tweets" are worth noting:

- Everywhere I go the rod with me (August 8, 2016)
- I been running through rubber bands all day hoe (August 8, 2016)
- Where these niggaz that been robbing these gun stores . . . let me shop witcha fam (August 2, 2016)
- My weed good . . . but my sex better (August 2, 2016)

[DE 33-3 at 115, 116, 124].

These posts, like Lewis' information, also support a reasonable inference that Doaty was involved in illegal activity.

Finally, Officer Richardson had reasonable suspicion to search Doty's car because before he searched it Doty told him that there might be a bullet in it[3]. [DE 33-1 at 89]. As a condition of his diversion, Doaty could not possess ammunition.[4]   [DE 33-2 at 112]. Officer Richardson's knowledge that there might be a bullet in Doaty's car—standing alone—is likely sufficient to justify his search of it. *See United States v. Bush*, 500 F.2d 19, 21 (6th Cir. 1974) (holding there was probable cause for search of car when "the police officers had information from the police dispatcher that the appellant was in a stolen car and that there might be a gun in the car. It further

---

[3] Officer Richardson decided to search Doaty's car before Doaty told him that there might be a bullet inside it.  However, Doaty's statement can still nonetheless be used to support reasonable suspicion for the search because it was made *before* the search was conducted.  *See Ornelas v. United States*, 517 U.S. 690, 696 (1996)  (A determination of reasonable suspicion requires an inquiry into "the events which occurred leading up to the stop or search"); *See also Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006) ("An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action'") (quoting *Scott v. United States,* 436 U.S. 128, 138 (1978).
[4] Possession of ammunition by a felon is a federal crime. *See* 18 U.S.C. § 922(g)(1).

6

appears that, after the officers stopped the car in question, they searched the appellant and found several bullets"); *United States v. Ruggiero*, 824 F. Supp. 379, 394 (S.D.N.Y. 1993), *aff'd sub nom. United States v. Aulicino*, 44 F.3d 1102 (2d Cir. 1995) ("Having observed a bullet in the rear of the car, however, the police had probable cause to search the vehicle, and any containers inside the vehicle"); *United States v. Black*, No. 8:08-CR-128-T-23EAJ, 2009 WL 2781537, at *2 (M.D. Fla. Aug. 28, 2009) ("[B]efore searching the vehicle, Tester knew that Defendant was a convicted felon and observed the bullets in the driver's seat in plain view from outside the vehicle. These facts constituted probable cause to believe that Defendant had violated Florida law and independently justified Tester's search of the vehicle").

But, Officer Richardson's reasonable suspicion was based on more than just a single bullet. Reviewing the totality of the circumstances, including Lewis' statements, Doaty's "tweets," and Doaty's statements before the search, Officer Richardson had reasonable suspicion to search Doaty's car for evidence of illegal activity. As a result, Doaty's first objection is **OVERRULED**.

**B.     Second objection: Lewis' information was unreliable and stale**

Doaty objects to the "Magistrate Judge's analysis of the facts of this case as it relates to the reliability of the information relied upon to establish reasonable suspicion." [DE 39 at 166-167]. Doaty argues "that the information provided by the informant, (who, significantly, was an EX-girlfriend), is lacking in any indicia of reliability, and in addition, stale. The only 'ongoing activity' that could have possibly yielded evidence is the cache of firearms allegedly stored in a basement near the informant's home." *Id.*

          1. The information was reliable

"Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or

content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990). Reasonable suspicion, like probable cause, "is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the totality of the circumstances—the whole picture . . . that must be taken into account when evaluating whether there is reasonable suspicion." *Id.* (internal quotation marks and citation omitted).

Lewis, who identified herself by name, provided information about Doaty's illegal activities to Officer Richardson. *See United States v. Cooper*, 1 F. App'x 399, 403 (6th Cir. 2001) ("An informant's tip, by itself, can suffice to create probable cause if the tip appears reliable under the totality of the circumstances . . . The fact that Mrs. Cooper made her identity known to the officers lends credence to her statement"). Officer Richardson believed she lived with Doaty and therefore would have personal knowledge of his crimes. *See Massachusetts v. Upton,* 466 U.S. 727, 734-735 (upholding search warrant based on ex-girlfriend's detailed tip of criminal activity which she observed first-hand despite her attempt to proceed anonymously, her recent break-up with the defendant, and her admitted desire to "to burn him")[5]; *United States v. Knox*, 883 F.3d 1262, 1276 (10th Cir.), *cert. denied*, 139 S. Ct. 197, 202 L. Ed. 2d 123 (2018) ("Ms. McBee, spoke from personal knowledge about the defendant's gun habits. As a former girlfriend she expressed knowledge of Knox's routines and whether he frequently carried firearms on his person. She spoke with specificity about the particular types of weapons Knox was known to carry . . . Detective Finley was able to corroborate Ms. McBee's information about the friendship between Knox and Young").

---

[5] Because Lewis is Doaty's ex-girlfriend, Doaty implies that she has ill-will towards him or a motive to fabricate allegations. Yet Doaty provides no evidence to support this implication.

Lewis' information was sufficiently reliable because Office Richardson corroborated it. Lewis told Officer Richardson that Doaty was involved in the drug trade and possessed firearms. Lewis' information was corroborated by Doaty's own words—first, by his "tweets," and then in his statements to Officer Richardson. As noted above, his Twitter page is rife with references to drug dealing and weapon possession. Lewis' prior relationship with Doaty, coupled with Doaty's own statements, corroborated her information and made it sufficiently reliable to justify a search of his vehicle.

    2. <u>The information was not stale</u>.

"The staleness inquiry depends on the inherent nature of the crime." *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009) (internal quotation marks and citation omitted). "In the context of drug crimes, information goes stale very quickly because drugs are quickly sold and consumed[,]" but "evidence that criminal activity is of an ongoing nature will defeat claims of staleness." *Marcilis v. Twp. of Redford*, 693 F.3d 589, 601 (6th Cir. 2012) (internal quotation marks and citations omitted). "Possession is a course of conduct, not an act; by prohibiting possession Congress intended to punish as one offense all of the acts of dominion which demonstrate a continuing possessory interest in a firearm." *United States v. Jones,* 533 F.2d 1387, 1391 (6th Cir.1976). Felon in possession of a firearm is "a continuing offense that ceases only when the felon relinquishes possession." *United States v. Goodwin*, 552 Fed. App'x. 541, 545 (6th Cir. 2014).

Lewis provided information—within a month or less of the search of Doaty's car—that Doaty was involved in "criminal activity" of an "ongoing nature." First, Lewis told Officer Richardson that Doaty was "drug investor," suggesting that his practice of loaning money to drug dealers and collecting "interest" was an ongoing enterprise. Second, Lewis told Officer

9

Richardson that Doaty possessed firearms. Being a felon in possession of a firearm is a "continuing offense that ceases only when the felon relinquishes possession." *Goodwin*, 552 Fed. 545.

Doaty's "tweets" also reflect that he was engaged in ongoing criminal activity. Officer Richardson reviewed his posts from July 21, 2016 to August 8, 2016. [DE 33-3]. During that period, Doaty persistently posted about drug use, drug trafficking, and firearm use and possession.

Doaty told Officer Richardson moments before his car was searched that there might be a bullet in it. As noted above, this information, which was exceedingly "fresh," alone may have been enough to justify the search.

Because the information provided by Lewis was corroborated, less than one-month old, and based on criminal activity of an ongoing nature (including on the day Officer Richardson searched his car), it was not stale. Doaty's second objection is **OVERRULED**.

### C. Third objection: Nexus requirement

Doaty asserts that Judge Lindsay did not "sufficiently address or refute" his argument that "the nexus requirement applies when using the standard of reasonable suspicion, just as it is when there is a probable cause standard." [DE 39 at 166]. Doaty argues that "[t]he facts of this case do not indicate any reason to believe contraband would be located in Mr. Doaty's unoccupied vehicle." *Id.*

"To justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (internal quotation marks and citation omitted). This requires "a nexus between the place to be searched and the evidence sought." *Id.*

Doaty's argument fails because he told Officer Richardson—moments before he searched Doaty's vehicle—that a bullet would be found in his car. As noted above, Doaty cannot legally possess ammunition. Doaty's statements creates a nexus between the "place to be searched" (his car) and the "evidence to be sought" (the bullet). For that reason, Doaty's third objection is **OVERRULED**.

### III. CONCLUSION

Accordingly, for the reasons stated above, **IT IS ORDERED** as follows:

(1) The **Report** and **Recommendation** of the United States Magistrate Judge, [DE 37], is **ACCEPTED**.

(2) Defendant's Objections, [DE 39], are **OVERRULED**;

(3) Defendant's Motion to Suppress, [DE 23], is **DENIED**; and

(4) This matter is scheduled for a **Status Conference** on **October 6, 2020, at 1:30 p.m.** The Defendant shall be present for the conference and the parties shall be prepared to schedule the case for trial at that time.